IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS HUTTNER, ) <br> ) <br> Claimant, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Respondent. ) | No. 13 CV 6606 <br><br> Jeffrey T. Gilbert <br> Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Claimant Thomas Huttner ("Claimant") brings this action under 42 U.S.C. § 405(g) against Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), seeking review of the Commissioner's decision to deny Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 5.]

Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 20.] The Commissioner has also moved for summary judgment. [ECF No. 25]. For the reasons stated below, Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

## I. PROCEDURAL HISTORY

In September of 2010, Claimant filed an application for DIB, alleging a disability onset date of April, 21, 2010. (R. 156-157.) The Social Security Administration ("the SSA") initially denied the application on December 17, 2010. (R. 83-84.) Then, on March 25, 2011, the SSA denied the application on reconsideration. (R. 85-86.) Roughly one month later, on May 9,

2011, Claimant requested an administrative hearing. (R. 99.) An Administrative Law Judge ("the ALJ") held the hearing on February 22, 2012. (R. 43.) At that hearing, Claimant, who was represented by counsel, appeared and testified. (R. 43.) A vocational expert ("the VE") also appeared and testified. (R. 43.)

On March 23, 2012, the ALJ issued a written decision. (R. 24-35.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. (R. 35.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since the alleged onset date. (R. 26.) At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease, depression, anxiety, post-traumatic stress disorder, and obesity. (R. 26.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 26.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to do light work. (R. 27.) The ALJ determined that Claimant was limited to jobs involving simple, routine, and repetitive tasks. (R. 27.) The ALJ excluded work that required any fast-paced production requirements or any use of ladders, ropes, or scaffolds. (R. 27.) The ALJ determined that Claimant could only perform work that allowed him to alternate between sitting and standing every forty-five minutes. (R. 27.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 34.)

Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 34.) Specifically, the ALJ found Claimant could work as a cashier. (R. 35.)

2

Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 35.) On April 26, 2012, Claimant sought review of the ALJ's decision. (R. 18.) On July 26, 2013, the Social Security Appeals Council denied the request. (R. 1.) That denial made the ALJ's opinion into the final decision of the Commissioner. (R. 1.) *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, a court may not "displace [an] ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court "will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if an ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While an ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). An ALJ must, at a minimum, articulate his analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary

3

support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

## III. ANALYSIS

Claimant asserts that there are three problems with the ALJ's decision. First, the ALJ did not properly consider Therapist Kebra Koenitz's treatment notes. Second, the ALJ wrongly determined that Claimant could work as a cashier. Third, the ALJ failed to correctly interpret Dr. Rhutav Parikh's opinion. The Court finds that the ALJ did not commit these errors.

### 1. The ALJ Properly Considered Therapist Kebra Koenitz's Treatment Notes.

Therapist Kebra Koenitz is a Licensed Clinical Professional Counselor who saw Claimant for roughly a year from January 2011 through December 2011. (R. 463-485, 634-650). During her sessions with Claimant, Therapist Koenitz prepared treatment notes, which reflect the therapist's assessment of Claimant's conditions and usually contain at least some description of his self-report. The notes have two sections; the top half has a checklist and corresponding short lines on which a couple words could be written, and the bottom half contains Therapist Koenitz's narrative description. In the record, the treatment notes appear in two different places, with the first set covering January through August and the second set running from August through December. (R. 463-485, 634-650).

Claimant asserted in his opening brief that the ALJ "skip[ped] over" the second set of notes by "neglect[ing] to discuss" them. [ECF No. 21, at 10-11.] Claimant does not mention this contention in his reply brief, but the Court still will address it.

The ALJ devoted a 14-line paragraph to discussing the first set of treatment notes. (R. 32.) Then, just two paragraphs later, the ALJ cited the second set of treatment notes and stated, "Ms. Koenitz's counseling session notes continued to reflect the same complaints,

4

preoccupations, and general findings throughout 2011." (R. 33.) Clearly, the ALJ was aware of the second set of treatment notes, considered them thoroughly, and understood them to be consistent with the in depth discussion in the previous lengthy paragraph. It cannot be said that the ALJ skipped the second set of treatment notes or ignored a line of evidence. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Claimant created another strawman by chastising the ALJ for "conclud[ing] that [Claimant's] mental impairments do not affect anything but his driving . . . ." [ECF No. 21, at 11.] Again, Claimant walks back this argument and, in his reply brief, only criticizes the ALJ for finding that Claimant's anxiety is primarily centered on car-related situations. [ECF No. 27, at 2-3.]

The ALJ recognized that Claimant's anxiety arose in "situations closely related to traveling in cars," not just when Claimant was driving. (R. 33.) For instance, the ALJ acknowledged that he had nightmares and flashbacks, and that his anxiety caused problems with sleeping. (R. 33.) The ALJ fully appreciated that even if the anxiety was car-related, its effects could be far reaching because, for example, it could harm Claimant's ability to concentrate. (R. 26, 33.) Further, the ALJ explained that Claimant's anxiety was not even exclusively limited to car-related situations. (R. 33.) Claimant is still correct, though, that the ALJ determined that Claimant's "complaints of anxiety have centered primarily if not quiet exclusively on situations closely related to traveling in cars" and that his anxiety "does not appear to have generalized to other situations, based on the treatment notes." (R. 33.)

As mentioned above, the treatment notes essentially have two sections. The first portion – with the checklist – lists Claimant's conditions but does not have enough space to allow for detail about how or when the condition is an issue. The more narrative portion, however, often

describes what triggers the conditions and some of their effects. For this reason, that portion of the treatment notes is much more useful in assessing the accuracy of the ALJ's characterization.

In reviewing both sets of notes, the Court has determined that the narrative portion almost always links Claimant's anxiety, and related problems, to his car accident or driving. This is even true of the treatment notes that Claimant cites. For instance, the December 2, 2011 treatment note quotes Claimant as saying "PT was like reliving the whole accident again," and describes his participation in a deposition as "trigger[ing] flashbacks and trauma feelings." (R. 636.) The November 16 treatment note focuses on Claimant's improvement – particularly in the area of treatment compliance – but does reference relationship slumps and sleep problems, (R. 635), which previous notes explained were related to the accident. *See, e.g.,* R 463, 464. On November 12, Therapist Koenitz stated that she had addressed Claimant's "feelings of frustration and helplessness and [the] affects [that the] accident has had on his life." (R. 637.) The other treatment notes cited by Claimant almost uniformly tie his anxiety to the accident or driving. *See, e.g.,* R. 634, 638, 642, 643, 646. This is also true of earlier notes not cited by Claimant. *See, e.g.,* R. 463, 464, 465, 466, 467. Therefore, substantial evidence supports the ALJ's characterization.

Claimant's final argument is that the ALJ wrongly characterized the treatment notes as "not generally refer[ring] to major problems" with concentration. (R. 27.) In making this argument, Claimant relies almost exclusively on conditions listed as a thought process problem ("TPP") in the checklist portion of the treatment notes.

Only a few of the conditions, however, are consistently mentioned in the thirty-four treatment notes which the Court can read.[1] Four treatment notes do not list any TPPs. (R. 469,

---

[1] The Court cannot clearly make out the June 25, 2011 treatment note. (R. 483). The note appears, though, not to reference any TPP.

6

473, 482, 645.) Loose association and disassociation, the most commonly referenced TPPs, appear in eighteen treatment notes. (R. 463, 464, 467, 468, 475, 477, 479, 480 485, 640, 641, 642, 643, 644, 646, 647, 648, 650.) In half of these, one or the other is the only TPP. (R. 463, 464, 468, 475, 479, 485, 644, 648, 650). The two next most frequent TPPs, digressive thinking and distraction, are each referenced in just six of the thirty-four notes. (R. 472, 634, 636, 638, 639, 643); (R. 635, 636, 640, 641, 642, 646). Thought blocking is mentioned in half that number. (R. 466, 637, 639.)[2] Memory and/or organizational problems are listed as a TPP in three notes. (R. 484, 647, 649). The same is true of issues with thought completion and concentration. (R. 637, 638, 649). Only one treatment note reports flooding. (R. 636.) Finally, conditions that are not clearly related to concentration issues – including depression, anxiety, and nightmares – are listed in six notes. (R. 465, 467, 470, 474, 477, 480.)[3]

No condition other than loose association or disassociation appears in more than eighteen percent of the treatment notes. The infrequency with which the conditions are mentioned as a TPP indicates that they either plague Claimant so infrequently as not to be "general" problems or are not "major" enough to always merit notation. Moreover, almost one-third of the treatment notes qualify a listed TPP with "some" or "at times." (R. 466, 484, 485, 634, 635, 637, 639, 647, 649, 650). But Claimant has not identified any instance when Therapist Koenitz described a TPP as "serious" or "major," or used a similar magnifying descriptor. It is not self-evident that these TPPs, particularly when mentioned so infrequently, always result in major problems with concentration. For these reasons, a reasonable mind could find this evidence adequate to support

---

[2] The note at record page 484 also notes "some problems" with "thought." (R. 484.) It is not clear if this also refers to thought blocking.
[3] Of course, these conditions could lead to problems with concentration. However, Claimant has not substantiated that link in this case.

7

the ALJ's characterization of the treatment notes as generally not revealing major problems with concentration. That means that the characterization is supported by substantial evidence.

**2. The ALJ Did Not Err in Finding Claimant Capable of Working As a Cashier.**

The ALJ found that Claimant could perform work as a cashier, which has a General Educational Development Scale ("GED") reasoning level of 3. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES (hereinafter DOT), 211.462-010. Claimant argues that he could not work as a cashier for two reasons.

Claimant asserts that the cashier job's GED reasoning level of 3 is inconsistent with the RFC's limitation to work that involved simple, routine, and repetitive tasks. He is wrong. *Sawyer v. Colvin*, 512 F. App'x 603, 610 (7th Cir. 2013); *Marshall v. Colvin*, 2014 WL 1230219, at *21 (N.D. Ind. Mar. 25, 2014). *See also Roxbury v. Colvin*, 2014 WL 4115862, at *9 n.5 (E.D. Wis. Aug. 19, 2014). Because there was no conflict between the *Dictionary of Occupational Titles* and the VE's testimony, the ALJ was not obligated to question the VE about the cashier job's reasoning level. *Sawyer*, 512 F. App'x at 610.

Claimant also asserts that his PTSD precludes him from working with the public, co-workers, or supervisors on a regular basis. Claimant has no evidence or authority to support this contention. Claimant has not identified any problems with the RFC or with the questioning of the VE. And the VE testified that Claimant's RFC was consistent with work as a cashier. Claimant's unsubstantiated assertion to the contrary is not enough to establish error. *Taylor v. Colvin*, 2015 WL 7871343, at *3 (N.D. Ill. Dec. 3, 2015). Because the VE's testimony was reliable, it satisfies the Commissioner's burden at step five. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008).

8

### 3. The ALJ Was Not Required to Contact Dr. Parikh.

On January 5, 2011, Dr. Rhutav Parikh examined Claimant and then prepared some notes. (R. 447.) In these notes, the doctor wrote that Claimant could not stand more than two hours continuously. (R. 447.) The ALJ discussed these findings. (R. 31.) And the ALJ fully accounted for them in the RFC by limiting Claimant to work that permitted alternating between sitting and standing every forty-five minutes. (R. 27.)

Despite what Claimant contends, the ALJ did not misread Dr. Parikh's opinion as affirmatively stating that Claimant could stand or walk for a certain number of *total* hours in a workday. Instead, the ALJ explained that Dr. Parikh's limitation should be "interpreted as meaning that the claimant could stand and walk no more than two hours at a time before needing a short rest." (R. 31.) This reading of Dr. Parikh's opinion does not ascribe to the doctor the opinion that Claimant is capable of standing or walking for six-hours in a work day. Therefore, the ALJ did not misinterpret the opinion as Claimant alleges.

As Claimant concedes, Dr. Parikh did not opine about how many total hours Claimant could stand or walk in one day. [ECF No. 21, at 14.] There is no question as to whether the doctor was trying to render an opinion about the total-hours but did so in vague or cryptic language. Instead, his opinion simply touches on one matter and not the other. Moreover, the two questions – how long Claimant can stand/walk continuously and how long he can do so in total hours – are related but distinct. An opinion regarding either question can be thoroughly understood without the other. Because there was no ambiguity, the ALJ cannot have been duty bound to clarify one.

Claimant's last assertion is that the ALJ was required to contact Dr. Parikh because, without his opinion, there could not be substantial evidence to support the ALJ's decision not to

include a total-hours limit. An ALJ has a duty to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). If the record does not contain enough evidence to allow an ALJ to determine a claimant's limitations, the ALJ is required to more fully develop the record. *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010). There are limits to this obligation, though. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). And a reviewing court generally will uphold "the reasoned judgment of the Commissioner on how much evidence to gather." *Nelms*, 553 F.3d at 1097.

The ALJ discussed Claimant's disability report and hearing testimony, both of which provided insights into his ability to stand and walk by detailing his daily activities and physical condition. (R. 27-28, 30.) The ALJ considered the results of Claimant's MRI scans and x-rays. (R. 28.) The ALJ analyzed the many treatment notes from physical examinations and physical therapy sessions. (R. 28, 29, 31.) These reported test results, including range of motion and motor strength, limitations imposed – or not imposed – by Claimants' doctors, and Claimant's self-reported pain and limitations. (R. 28, 29, 31.) In correctly interpreting Dr. Parikh's opinion, the ALJ also clarified that it did not include a total-hours limitation, (R. 31), which is relevant to the substantial evidence determination. *Ziegler v. Astrue*, 576 F. Supp. 2d 982, 999 (W.D. Wis. 2008) *aff'd*, 336 F. App'x 563 (7th Cir. 2009). Likewise, the ALJ's description of the lack of objective medical evidence supporting such a limitation, (R. 30), supports the ultimate decision. *Murphy v. Astrue*, 454 F. App'x 514, 519 (7th Cir. 2012).

Claimant has not shown why this Court should not uphold the ALJ's reasoned judgment. He has not identified any evidence in the record that affirmatively demonstrates such a limitation exists. Further, the only deficiency in the record Claimant identifies is that the ALJ did not cite a medical opinion regarding how many hours Claimant can walk or stand in a day. That is true.

10

But the mere absence of a medical opinion on a given matter does not always render an ALJ completely incapable of addressing the matter. Claimant has not provided a reason why the ALJ could not make the finding at issue based on the objective medical evidence in the record. Claimant just asserts over and over that Dr. Parikh's opinion on the issue is important without explaining its significance in light of the other evidence in the record. That is not enough. *See D.O.B. ex rel. Bethea v. Colvin*, 2015 WL 400619, at *6 (S.D. Ind. Jan. 28, 2015).

Moreover, it is important to remember that the substantial evidence standard demands less than a preponderance of the evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). And a Court cannot "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). So long as reasonable minds could differ, the standard has been satisfied. *Id.* Even after Claimant reached, in Dr. Parikh's words, maximum medical improvement, (R. 376, 400), test results showed that he still had a full painless range of motion in his hips, negative straight leg raise bilaterally, and 5/5 motor strength throughout all major motor groups. (R. 452.) His imaging scans continued not to reveal significant problems. (R. 453, 454.) And none of his doctors imposed a total-hours limitation. At a minimum, the evidence considered by the ALJ was sufficient for a reasonable mind to conclude that he was capable of walking or standing six hours in a workday.[4]

In closing, it is worth noting that an ALJ is "entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.'" *Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009). In this case, Claimant was represented by counsel and was free to seek out Dr. Parikh's opinion regarding a total-hours limitation and present it to the ALJ. He did not. Although this failure is not determinative, it reinforces the Court's conclusion.

---

[4] State agency reviewing physician, Dr. C. A. Gotway, determined that Claimant could walk and/or stand six hours each workday. (R. 416.) Because the ALJ did not cite this physical residual functional capacity assessment, the Court has not relied on it in resolving this motion.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is denied and the Commissioner's motion is granted. The Commissioner's decision is sustained. This is a final judgment.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 28, 2015